N6tWrogP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                        22 Cr. 321 (JMF)

5   RONALD ROGERS,

6               Defendant.
                                         Plea
7   ------------------------------x

8                                        New York, N.Y.
                                         June 20, 2023
9                                        3:00 p.m.

10  Before:

11
                    HON. JESSE M. FURMAN,
12
                                         District Judge
13
                         APPEARANCES
14
    DAMIAN WILLIAMS
15       United States Attorney for the
         Southern District of New York
16  BY:  MATTHEW J. KING
         Assistant United States Attorney
17
    DAVID E. PATTON
18       Federal Defenders of New York, Inc.
         Attorney for Defendant
19  BY:  IAN H. MARCUS AMELKIN
         Assistant Federal Defender
20       Attorney for Defendant

21

22

23

24

25

1          (Case called; appearances noted)

2          THE COURT:  Good afternoon to all of you.

3          My understanding is that Mr. Rogers intends to change

4    his plea and enter a plea of guilty to Count One of the

5    indictment, 22 Cr. 321.

6          Is that correct, Mr. Marcus Amelkin?

7          MR. MARCUS AMELKIN:  He's going to plead to both

8    counts, your Honor.

9          THE COURT:  I'm sorry.  That's what I meant to say,

10   but thank you.

11         MR. MARCUS AMELKIN:  We'd still be open to one if the

12   government wants to change their mind.

13         THE COURT:  That is not up to me.

14         Mr. Rogers, before I accept your guilty plea, I need

15   to ask you certain questions to ensure that you are pleading

16   guilty because you are, in fact, guilty and not for some other

17   reason; to ensure that you understand the rights that you are

18   giving up by pleading guilty; and to ensure that you understand

19   the potential consequences of a guilty plea, including the

20   sentence that could be imposed upon you.

21         It is critical that you understand each of my

22   questions before you give me an answer, so if there's any

23   question that you do not understand, please let me know so that

24   your lawyer or I can explain it to you more fully.  And if at

25   any point you wish to speak with Mr. Marcus Amelkin for any

1  reason, let me know and I'll give you however much time you

2  need to speak with him.

3          Do you understand all that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Would you please rise and raise your right

6  hand so that my deputy can administer the oath to you.

7          (Defendant sworn)

8          THE COURT:  You may be seated.

9          You're now under oath, which means that if you answer

10 any of my questions falsely, you may be subject to prosecution

11 for the separate crime of perjury.

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Please tell me your full name.

15         THE DEFENDANT:  Ronald Alfred Rogers.

16         THE COURT:  And how old are you?

17         THE DEFENDANT:  28.

18         THE COURT:  How far did you go in school?

19         THE DEFENDANT:  High school graduate.

20         THE COURT:  And have you ever been treated or

21 hospitalized for any type of mental illness?

22         THE DEFENDANT:  No.

23         THE COURT:  Are you now or have you recently been

24 under the care of a doctor or mental health professional, such

25 as a psychologist or psychiatrist?

1          THE DEFENDANT:  No.

2          THE COURT:  Have you ever been treated or hospitalized

3    for any type of addiction, including drug or alcohol addiction?

4          THE DEFENDANT:  No.

5          THE COURT:  In the last 48 hours, have you taken any

6    medicine, pills, drugs or had any alcohol?

7          THE DEFENDANT:  No.

8          THE COURT:  Is your mind clear today?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And do you understand what's happening

11    here today?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Mr. Marcus Amelkin, have you discussed

14    this matter with Mr. Rogers?

15          MR. MARCUS AMELKIN:  We have.

16          THE COURT:  And in your judgment, does he understand

17    the rights that he would be giving up by pleading guilty?

18          MR. MARCUS AMELKIN:  He does.

19          THE COURT:  In your judgment, is he capable of

20    understanding the nature of these proceedings?

21          MR. MARCUS AMELKIN:  For sure.

22          THE COURT:  Does either counsel have any doubt as to

23    Mr. Rogers's competence to plead guilty at this time?

24          MR. KING:  No, your Honor.

25          MR. MARCUS AMELKIN:  No, your Honor.

1          THE COURT:  On the basis of Mr. Rogers's responses to

2     my questions, my observations of his demeanor here in court and

3     the representations of counsel, I find that he is fully

4     competent to enter an informed plea of guilty at this time.

5          Mr. Rogers, have you received a copy of the

6     indictment, 22 Cr. 321, charging you with two counts, one count

7     of conspiracy to engage in firearms trafficking and a second

8     substantive count for firearms trafficking?

9          Have you received a copy of that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And have you read it?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And have you had enough time to discuss

14     with Mr. Marcus Amelkin the two charges and any possible

15     defenses to those charges; did you have enough time to do that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And has he explained to you the

18     consequences of entering a guilty plea?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Are you satisfied with Mr. Marcus

21     Amelkin's representation of you?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.

24          Let me tell you now about the rights that you would be

25     giving up by pleading guilty.  As I said, if there's anything

1    you don't understand, please let me know, and either Mr. Marcus

2    Amelkin or I will explain it to you more fully.

3            Under the Constitution and laws of the United States,

4    you have the right to plead not guilty to the charges in the

5    indictment.

6            Do you understand that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  If you did plead not guilty, you would be

9    entitled to a speedy and public trial by a jury on those

10   charges.

11           Do you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  At that trial, you would be presumed to be

14   innocent, and you would not have to prove that you were

15   innocent.  Instead, the government would be required to prove

16   your guilt by competent evidence beyond a reasonable doubt

17   before a jury could find you guilty.

18           Do you understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  In order to find you guilty, a jury of 12

21   people would have to agree unanimously that you were guilty.

22           Do you understand that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  At that trial and at every stage of your

25   case, you would be entitled to be represented by a lawyer, and

1    if you could not afford a lawyer, one would be appointed at

2    public expense, free of cost to you, to represent you.

3             Do you understand that?

4             THE DEFENDANT:  Yes.

5             THE COURT:  During a trial, the witnesses for the

6    government would have to come to court, and your lawyer would

7    have an opportunity to cross-examine them and object to any

8    evidence offered against you.  You would also have an

9    opportunity to present evidence on your own behalf, and you

10   would have the right to have subpoenas issued or other process

11   used to compel witnesses to come to court and testify in your

12   defense.

13            Do you understand all that?

14            THE DEFENDANT:  Yes.

15            THE COURT:  At a trial, you would also have the right

16   to testify on your own behalf, but you would have the right not

17   to testify.  And if you chose not to testify, then no one,

18   including the jury, could draw any inference or suggestion of

19   guilt from the fact that you did not testify.

20            Do you understand that?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Before trial, you would have an

23   opportunity, if you had not waived it, to seek suppression or

24   exclusion of any evidence that the government would offer

25   against you at a trial.

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  If you were convicted at a trial, you

4     would have the right to appeal that verdict and any pretrial

5     rulings that I made in connection with your case.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  If you plead guilty, you will also have to

9     give up your right not to incriminate yourself, because I will

10    ask you questions about what you did in order to assure myself

11    that you are guilty, and you will have to admit and acknowledge

12    your guilt.

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  If you plead guilty and if I accept your

16    guilty plea, you will give up your right to a trial and the

17    other rights that we have just discussed, other than your right

18    to a lawyer, which you keep whether or not you plead guilty.

19    But there will be no trial, and I will enter a judgment and

20    sentence you on the basis of your plea after I have received a

21    presentence report prepared by the United States probation

22    department and any submissions that I get from your lawyer and

23    the lawyers for the government.  But there will be no trial

24    with respect to whether you did or did not commit the offense.

25    Nor will there be an appeal with respect to whether you did or

1    did not commit the offense or with respect to whether the

2    government could use any of the evidence that it has against

3    you.

4            Do you understand all of that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Even now, as you are entering this plea,

7    you have the right to change your mind, to plead not guilty and

8    to go to trial on the charges in the indictment.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you understand each and every one of

12   the rights that I have just explained to you?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And are you willing to give up your right

15   to a trial and the other rights that we have discussed?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Do you understand that you are charged in

18   Count One with conspiracy to engage in firearms trafficking, in

19   violation of 18 U.S. Code, Section 922(a)(1)(A) and Section

20   371; and you are charged in Count Two with firearms

21   trafficking, in violation of 18 U.S. Code, Section

22   922(a)(1)(A)?

23           Do you understand that those are the charges?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Mr. King, would you please state the

1    elements of those two offenses.

2                    MR. KING:  Yes, your Honor.

3                    As your Honor noted, Count One of the indictment

4    charges the defendant with conspiracy to commit firearms

5    trafficking, in violation of 18 U.S.C. 371.  In order to prove

6    the defendant guilty of Count One, the government would be

7    required to prove the following three elements beyond a

8    reasonable doubt:

9                    First, that two or more persons agreed to do something

10   which federal law prohibits -- here, to engage in gun

11   trafficking, in violation of Title 18, United States Code,

12   Section 922(a)(1)(A);

13                   Second, that the defendant knew of the conspiracy and

14   willfully joined the conspiracy; and

15                   Third, that at sometime during the existence of the

16   conspiracy, or agreement, one of the members of the conspiracy

17   performed, in the Southern District of New York, one of the

18   overt acts charged in the indictment in order to accomplish the

19   purpose of the agreement.

20                   The object of this conspiracy, as I said, was gun

21   trafficking, which is a violation of Title 18, United States

22   Code, 922(a)(1)(A).  Gun trafficking has two elements:

23                   First, that the defendant was not licensed to deal

24   firearms; and

25                   Second, that the defendant willfully engaged in the

1   business of dealing firearms.

2           Count Two of the indictment charges the defendant with

3   a substantive count of gun trafficking, again, in violation of

4   18 U.S.C. 922(a)(1)(A), and that has the two elements that I

5   just described for your Honor.

6           Finally, the government would also be required to

7   prove by a preponderance of the evidence that venue was proper

8   in the Southern District of New York.

9           In this case, the defendant traveled to Manhattan to

10  sell firearms.

11          THE COURT:  Thank you.

12          MR. KING:  Thank you, your Honor.

13          THE COURT:  Mr. Rogers, do you understand that if you

14  were to go to trial, with the exception of the venue

15  requirement that Mr. King mentioned at the very end, that the

16  government would have to prove those other elements beyond a

17  reasonable doubt before a jury could find you guilty?

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And do you understand that, as Mr. King

21  mentioned, the government would also have to prove that venue

22  was proper in this district -- that is, that something occurred

23  in this district in connection with each offense -- but its

24  burden on that would be only by a preponderance of the

25  evidence?

1                 Do you understand that?

2                 THE DEFENDANT:  Yes.

3                 THE COURT:  All right.

4                 Let me tell you now about the maximum possible

5      penalties for these crimes, and by maximum, I mean the most

6      that could possibly be imposed upon you.  It doesn't mean that

7      that is the sentence you will receive, but you do have to

8      understand that by pleading guilty you're exposing yourself to

9      a combination of punishments up to the statutory maximums.

10                 Do you understand that?

11                 THE DEFENDANT:  Yes.

12                 THE COURT:  Let me start with the potential

13     restrictions on your liberty.

14                 The maximum term in prison for each of these crimes is

15     five years in prison, which could be followed by a term of

16     supervised release up to three years.

17                 Supervised release means that you would be subject to

18     supervision by the probation department.  There would be rules

19     of supervised release that you would be required to follow.  If

20     you violated any of those rules, you could be returned to

21     prison without a jury trial and without credit for time spent

22     on your underlying sentence or time spent on postrelease

23     supervision.

24                 Do you understand that?

25                 THE DEFENDANT:  Yes.

1    THE COURT:  There is no parole in the federal system,

2    so you should understand that if you were sentenced to prison,

3    you will not be released early on parole.  There is a limited

4    opportunity to earn credit for good behavior, but if you were

5    sentenced to prison, you would have to serve at least 85

6    percent of the time to which you were sentenced.

7        Do you understand that?

8        THE DEFENDANT:  Yes.

9        THE COURT:  In addition to those restrictions on your

10   liberty, the maximum possible punishment also includes certain

11   financial penalties:

12       First, the maximum allowable fine for each count is

13   the greatest of $250,000, or twice the gross pecuniary, or

14   financial, gain derived from the offense or twice the gross

15   pecuniary, or financial, loss to someone other than you as a

16   result of the offense.

17       Second, I can order restitution to any person or

18   entity injured as a result of your criminal conduct.

19       Third, I can order you to forfeit any property used to

20   facilitate the crime or that was derived from the crime.

21       And finally, I must order a mandatory special

22   assessment of $100.

23       Do you understand that those are the maximum possible

24   penalties?

25       THE DEFENDANT:  Yes.

1       THE COURT:  Do you understand that it is possible,

2   taking the two counts together, that you could be sentenced up

3   to a maximum of ten years in prison, 120 months?  Do you

4   understand that together that's the maximum sentence?

5       THE DEFENDANT:  Yes.

6       THE COURT:  All right.  Now, are you a citizen of the

7   United States, Mr. Rogers?

8       THE DEFENDANT:  Yes.

9       THE COURT:  Do you understand, if you were not a

10  citizen, that by pleading guilty, you could expose yourself to

11  various negative immigration consequences, including removal,

12  denial of citizenship in the United States and denial of

13  admission into the United States?

14      Do you understand that if you were not a citizen,

15  those are among the possible consequences of a guilty plea?

16      THE DEFENDANT:  Yes.

17      THE COURT:  Do you understand that as a result of your

18  guilty plea, you may also lose certain valuable civil rights in

19  this country, to the extent that you have them or could

20  otherwise obtain them now, such as the right to vote, the right

21  to hold public office, the right to serve on a jury and the

22  right to possess any kind of firearm?

23      Do you understand that?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Are you serving any other sentence or

1    being prosecuted in any other court at this time?

2            THE DEFENDANT:  No.

3            THE COURT:  All right.

4            Now, do you understand that if Mr. Marcus Amelkin --

5    or anyone else, for that matter -- has attempted to predict

6    what your sentence will be in this case, their predictions

7    could be wrong?

8            Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  It's important for you to understand that

11   no one -- not your lawyer, no one; not the government's lawyer,

12   no one -- can give you any promise or assurance of what

13   sentence you will receive.  That's because your sentence will

14   be determined by me and by me alone, and I'm not going to do

15   that today.  Instead, I will wait until I get the presentence

16   report prepared by the United States probation department.

17   I'll do my own calculation of how the United States Sentencing

18   Guidelines apply to your case.  I will consider any possible

19   departures from the guidelines range, any submissions I get

20   from the lawyers, and ultimately the factors that govern

21   sentencing that are set forth in a statute, 18 U.S. Code

22   Section 3553(a).  I'll do all of that before determining and

23   imposing an appropriate sentence.

24           Do you understand that?

25           THE DEFENDANT:  Yes.

1          THE COURT:  And have you discussed that process, the

2     sentencing process, with Mr. Marcus Amelkin?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Now, even if your sentence is different

5     from what Mr. Marcus Amelkin or anyone else has told you that

6     it might be, even if it's different from what you expect or

7     hope it to be, even if it is different from what is set forth

8     in the *Pimentel* letter that I will discuss in one moment, you

9     will still be bound by your guilty plea and you will not be

10    allowed to withdraw your plea.

11         Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.

14         Now, as I just referenced, I understand that there is

15    no plea agreement between you and the government in this case.

16    Is that correct?

17         THE DEFENDANT:  Correct.

18         THE COURT:  Instead, pursuant to the instructions of

19    the Court of Appeals in a case called *United States v.*

20    *Pimentel*, the government has prepared a letter setting forth

21    its view of how the sentencing guidelines apply to you in the

22    so-called *Pimentel* letter.

23         Is that your understanding as well?

24         THE DEFENDANT:  Yes.

25         THE COURT:  I have a copy of the government's *Pimentel*

1    letter, dated May 19, 2023, from Mr. King to Mr. Marcus

2    Amelkin.  I'll mark this as Court Exhibit 1 and provide it to

3    the government to retain in its possession after this

4    proceeding.

5              Have you seen a copy of the *Pimentel* letter?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Did you read it?

8              Yes?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Did you discuss it with Mr. Marcus

11   Amelkin?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Did he explain it to you and answer any

14   questions you may have had about --

15             THE DEFENDANT:  Yes.

16             THE COURT:  -- the letter?

17             And do you understand what the government is saying in

18   this letter?

19             THE DEFENDANT:  Uh-huh.

20             THE COURT:  All right.

21             Do you understand that in this letter, the government

22   states its belief that the applicable guidelines range -- that

23   is, range under the United States Sentencing Guidelines that I

24   must consider in connection with sentencing -- that the

25   applicable range is 87 to 108 months' imprisonment?

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Now, let me stress that that is the

4   government's view at the moment of how the guidelines apply to

5   you.  They're not here binding on the government; it may come

6   to a different conclusion at the time of sentencing.  But most

7   importantly, they're not binding on you and they're not binding

8   on me.

9          I have my own, independent obligation to determine

10  what the correct guidelines range is.  I may or may not agree

11  with the guidelines calculation set forth in the government's

12  letter.  The important point for you to understand is that

13  whatever calculation I make is, even if it's higher than

14  this -- and I'm not suggesting that that's what it will be --

15  you'll still be bound by your guilty plea and you will not be

16  allowed to withdraw your plea.

17         Do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Has anyone made any promise to you or

20  offered you any inducement to plead guilty in this case?

21         THE DEFENDANT:  No.

22         THE COURT:  Has anyone threatened you or forced you to

23  plead guilty?

24         THE DEFENDANT:  No.

25         THE COURT:  Has anyone made a promise to you as to

1   what your sentence will be in this case?

2               THE DEFENDANT:  No.

3               THE COURT:  All right.  Mr. Rogers, at this time, let

4   me ask you, how do you plead to Count One of the indictment?

5               THE DEFENDANT:  Guilty.

6               THE COURT:  How do you plead to Count Two?

7               THE DEFENDANT:  Guilty.

8               THE COURT:  And can you tell me in your own words what

9   you did that makes you believe that you're guilty of Counts One

10  and Two of the indictment.

11              THE DEFENDANT:  In 2018 and further, I illegally

12  purchased firearms in the state of Georgia and was compensated

13  by bringing them to New York.  I'm unlicensed and sold them

14  here in New York.  And I'm sorry.

15              THE COURT:  All right.  Now, when you say you're

16  unlicensed, that is to say that you did not have a license to

17  serve as an importer, manufacturer or dealer of those firearms.

18  Is that correct?

19              THE DEFENDANT:  Correct.

20              THE COURT:  And did you understand that when you did

21  what you've described, that you were not permitted to sell the

22  firearms in New York because of that?  Did you understand that?

23              THE DEFENDANT:  Yes.

24              THE COURT:  And you said 2018 and after.  Am I correct

25  that it continued until into 2021?  Is that correct?

1          THE DEFENDANT:  Uh-huh.

2          THE COURT:  Yes?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And would you describe yourself as being

5    engaged in the business of selling firearms over that period of

6    time?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Yes?

9          THE DEFENDANT:  Yes.

10         THE COURT:  All right.  And when you did that, did you

11   understand and know that what you were doing was against the

12   law and wrong?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And maybe you mentioned this, but when you

15   did this, did you do so with at least one other person?  Did

16   you have an agreement to and did you sell firearms in New York

17   without a license to do so with another person?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And can you tell me, did any of this take

20   place in either Manhattan or the Bronx?

21         THE DEFENDANT:  It was mostly in Manhattan.

22         THE COURT:  All right.

23         Mr. Marcus Amelkin, are you aware of any valid defense

24   that would prevail at a trial or of any reason that Mr. Rogers

25   should not be permitted to plead guilty to Counts One and Two?

1            MR. MARCUS AMELKIN:  No, your Honor.

2            THE COURT:  Mr. King, are there any additional

3     questions you'd like me to ask Mr. Rogers?

4            MR. KING:  Your Honor, just for the record, but I

5     think your Honor asked Mr. Rogers if the conduct continued into

6     2021.  Just the date charged in the indictment is into 2022, so

7     if your Honor could confirm that the conduct continued from

8     2018 into 2022.

9            THE COURT:  All right.  I don't think it matters in

10    the sense that it's all within the statute of limitations.

11    That's all I wanted to confirm.

12           MR. KING:  That's fine.  I just wanted to be clear

13    that the conduct continued until 2022.

14           THE COURT:  Understood.

15           Could you please proffer briefly what the government's

16    evidence would be and what it would show if Mr. Rogers were to

17    go to trial.

18           MR. KING:  Yes, your Honor.

19           The government's evidence at trial would consist of,

20    among other things, data from Mr. Rogers's iCloud and cell

21    phone, including photos and videos of Mr. Rogers possessing

22    guns that were purchased as part of this trafficking scheme,

23    showing him traveling to New York City and possessing large

24    amounts of cash; and text messages -- again, from his iPhone

25    and cell phone -- and conversations between the defendant and

1  coconspirators and also gun purchasers regarding the illegal

2  purchase and sale of firearms, including text messages showing

3  the defendant knew the guns were going to be used for violence.

4  There's cell-site data showing the defendant's

5  repeated travel to New York City that coincided with the

6  purchase of firearms in Georgia by his codefendant, Ms. Rogers.

7  There's video surveillance of his codefendant

8  purchasing those firearms from federally licensed firearms

9  dealers in Georgia.

10  There's ATF paperwork and transaction receipts from

11  the purchase of those firearms.

12  There's physical evidence seized during this

13  investigation, including firearms that were trafficked as part

14  of the scheme that were recovered at crime scenes in New York

15  City.

16  And then there also would be testimony from an ATF

17  agent regarding the defendant's lack of a license to sell

18  firearms.

19  THE COURT:  Thank you.

20  Do both counsel agree that there's a sufficient

21  factual basis for a guilty plea to Count One and Count Two?

22  MR. MARCUS AMELKIN:  Yes, your Honor.

23  MR. KING:  Yes, your Honor.

24  THE COURT:  And does either counsel know of any reason

25  that I should not accept Mr. Rogers's plea of guilty to each

1    count?

2              MR. KING:  No, your Honor.

3              MR. MARCUS AMELKIN:  No, your Honor.

4              THE COURT:  All right.

5              Mr. Rogers, because you acknowledge that you are, in

6    fact, guilty as charged in the indictment; because I am

7    satisfied that you know of your rights, including your right to

8    go to trial, and you understand the potential consequences of

9    your guilty plea; and because I find that you are knowingly and

10   voluntarily pleading guilty, I accept your guilty plea and

11   enter a judgment of guilty on Counts One and Two of the

12   indictment.

13             The probation department will want to interview you in

14   connection with the presentence report it will prepare.  If you

15   choose to speak to the probation department, it is critical

16   that anything you say is truthful and accurate.  Among other

17   things, that report is very important to me in deciding what

18   sentence to impose upon you.

19             Before sentencing, you and Mr. Marcus Amelkin will

20   have time to review the report.  I would urge you to review it

21   with care.  If you find any mistakes in the report or anything

22   that you wish to bring to my attention in connection with

23   sentencing, you should share that with Mr. Marcus Amelkin so

24   that he can share it with me.

25             Do you understand all that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.

3          Mr. Marcus Amelkin, do you wish to be present in

4     connection with any interview?

5          MR. MARCUS AMELKIN:  I do.

6          THE COURT:  I'll order that no interview take place

7     unless counsel is present.

8          Sentencing will be set for October 12 at 10 a.m. --

9     again, October 12 of this year at 10 a.m.

10          I direct the government to provide the probation

11     department with its factual statement of the offense within

12     seven days.

13          Defense counsel must arrange for Mr. Rogers to be

14     interviewed by the probation department in the next two weeks.

15          In accordance with my individual rules and practices

16     for criminal cases, defense submissions are due two weeks prior

17     to sentencing.  The government's submission is due one week

18     prior to sentencing.  In the unlikely event that you don't have

19     a substantive sentencing submission, please file a letter to

20     that effect so that we don't think we are missing anything.

21          Mr. King, what's the government's position with

22     respect to bail between now and sentencing?

23          MR. KING:  Your Honor, the government has no objection

24     to Mr. Rogers continuing to be out on bail.

25          THE COURT:  All right.

1          Mr. Rogers, the conditions upon which you've been

2     released until today will continue to apply through the date of

3     the sentencing.  Let me stress two things to you:

4          First of all, it is critical that you comply with all

5     of those conditions.  If you fail to do so, No. 1, it could

6     affect your release status between now and the time of

7     sentencing; No. 2, it may well affect what sentence you will

8     receive, so you should understand that.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Second, you must be here on the date and

12     time that I set for sentencing, October 12 at 10 a.m.  You

13     should stay in touch with Mr. Marcus Amelkin to ensure that you

14     know if that changes, but unless you are told to do otherwise,

15     you must be here on that date and time.  If you're not, you may

16     be subject to prosecution and punishment for a separate

17     crime -- failure to appear -- and subject to punishment above

18     whatever punishment you receive in connection with your plea

19     today.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.

23          Anything further from the government?

24          MR. KING:  No, your Honor.  Thank you.

25          THE COURT:  Anything further from you, Mr. Marcus

N6tWrogP

1    Amelkin?

2         MR. MARCUS AMELKIN:  No.  Enjoy the holiday weekend,

3    your Honor.  Thank you.

4         THE COURT:  All right.  Happy holiday weekend to

5    everyone.

6         We are adjourned.  Thank you very much.

7         (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25